FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 07, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JONATHAN A. SUTTER, an individual,<br><br>                Plaintiff,<br><br>   v.<br><br>GLOBAL EQUITY FINANCE, INC., a foreign corporation, and ROY KOLDARO, an individual.<br><br>                Defendants. | No. 2:22-cv-00105-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>ECF No. 25 |

Before the Court is Plaintiff Jonathan Sutter's Motion for Partial Summary Judgment. ECF No. 25. On June 6, 2023, the Court conducted a hearing on the motion. ECF No. 42. Michael Brandenberg and Adam Chambers appeared on behalf of Sutter. David Ebel appeared on behalf of Defendants Global Equity Finance, Inc. ("Global") and Roy Koldaro.

Sutter brings six claims against Defendants: Violation of the Consumer Loan Act ("CLA"), Violation of the Mortgage Broker Practices Act, Unauthorized

ORDER - 1

Practice of Law, Violation of the Consumer Protection Act ("CPA"), Bad Faith, and Negligence. ECF No. 1-1. Sutter seeks partial summary judgment on his CPA claim. ECF No. 25. Koldaro and Global oppose the motion and request additional discovery pursuant to Fed. R. Civ. P. 56(d)(1).

The Court, having reviewed the record and having heard from the parties, is fully informed. For the reasons discussed below, Sutter's Motion for Partial Summary Judgement, ECF No. 25, is **DENIED**.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[1] Sutter obtained a loan to purchase his home located on North 5th Street, Cheney, Washington ("5th Street Residence"). ECF No. 26 at 1 ¶ 1; ECF No. 27 at 2 ¶ 3. Sutter is a member of the National Guard and obtained the loan through the Department of Veteran's

---

[1] Sutter filed a Statement of Undisputed Facts, ECF No. 26, Defendants filed a Statement of Disputed Material Facts, ECF No. 34, and Sutter filed a Reply Statement of Material Facts Not in Dispute. ECF No. 36. The parties did not file a Joint Statement of Uncontroverted Facts as set forth in the Jury Trial Scheduling Order, ECF No. 22 at 8. The Court considered facts undisputed if admitted or not controverted by the procedures in LCivR 56(c) and Fed. R. Civ. P. 56(c).

ORDER - 2

1   Affairs ("VA") Home Loan Guaranty Program.  ECF No. 26 at 2 ¶ 1.  Sutter

2   purchased the manufactured home on May 24, 2010.  ECF No. 26 at 1 ¶ 1.

3         In January 2018, Sutter contacted Roy Koldaro, an employee of Global, for

4   assistance related to his mortgage.  ECF No. 26 at 2 ¶ 2; ECF No. 27 at 2 ¶ 4.

5   Global is licensed through the Washington Department of Financial Institutions

6   ("DFI") to conduct business as a consumer loan company, and Koldaro is licensed

7   as a mortgage loan originator.  ECF No. 1-1 at 6 ¶ 8-9; ECF No. 20 at 3 ¶ 9-10.  In

8   February 2018, Koldaro assisted Sutter to refinance Sutter's mortgage, creating a

9   new loan also guaranteed through the VA Home Loan Guarantee Program.  ECF

10  No. 20 at 3 ¶ 12; ECF No. 26 at 2 ¶ 3; ECF No. 27 at 2 ¶ 5.

11        In June 2019, Christine Ribble, Sutter's neighbor, expressed interest in

12  purchasing the 5th Street Residence.  ECF No. 26 at 2 ¶ 4; ECF No. 27 at 2 ¶ 5.

13  On July 23, 2019, Ribble contacted Koldaro seeking information regarding Sutter's

14  loan.  ECF No. 1-1 at 7 ¶ 13; ECF No. 20 ¶ 13.  Ribble sent the following:

15              Mr. Koldaro, I am a neighbor of Mr. Sutter and we are
                trying to see if I can either assume his loan or take it over.
16              . . . I am trying to buy his lot so I can, in the future expand
                my lot.  But getting a loan for a mobile home is next to
17              impossible so I was trying to do it another way. . . . .

18  ECF No. 28-2 at 2.  Sutter was also communicating with Koldaro about his

19  mortgage at this time.  ECF No. 26 at 2 ¶¶ 6-7; ECF No. 34 at 2-3 ¶¶ 2-3; ECF No.

20  36 at 2 ¶ 2.  Sutter and Koldaro communicated about transferring title of Sutter's

ORDER - 3

1  property.  ECF No. 26 at 3 ¶ 8; ECF No. 32 at 3-4 ¶¶ 7-8, 13, 11; ECF No. 34 at 2-3 ¶ 3.

On August 30, 2019, Sutter executed a warranty deed to transfer title of the 5th Street Residence to Ribble.  ECF No. 26 at 3 ¶¶ 8-9.  Koldaro provided the template for the deed.  ECF No. 26 at 3 ¶ 8-9.

On October 4, 2019, Ribble emailed Koldaro to explain that when the deed was filed, she did not assume Sutter's mortgage as she had expected.  ECF No. 28-3 at 3-4.  Ribble accused Koldaro of advising her that the deed transfer would result in the mortgage assumption, and instead, Ribble and Sutter are stuck in a scenario where Ribble has the title of the house and Sutter still has a mortgage.  ECF No. 28-3 at 2-4.  Sutter remained liable on his mortgage until December 13, 2021.  ECF No. 32 at 6 ¶ 23; ECF No. 36 at 4 ¶ 7.

Sutter reports that he is unable to procure a mortgage to purchase a home and has purchased a shed to store his belongings.  ECF No. 26 at 4-5 ¶¶ 15, 18, 22; ECF No. 27 at 3-4 ¶¶ 15, 16, 19; ECF No. 34 at 5-9 ¶¶ 8, 12, 15.

On January 4, 2021, Sutter filed a complaint against Global and Koldaro with the DFI.  ECF No. 26 at 5 ¶ 19.  On May 27, 2021, DFI issued a closure letter with its findings.  ECF No. 26 at 5 ¶ 20; ECF No. 27-2 at 2-6; ECF No. 34 at 8 ¶ 13.  The DFI letter stated "[b]ased upon the available evidence, the Department

ORDER - 4

determined that [Global and Koldaro] likely violated the [Consumer Loan Act] by engaging in practices that were deceptive and unfair." ECF No. 27-5 at 2.

On April 7, 2022, Sutter filed his Complaint in the Spokane County Superior Court. *See* ECF No. 1-1. On May 10, 2022, Defendants removed the case to this Court. ECF No. 1 at 1-2. Sutter sought remand, *see* ECF No. 4, which this Court denied, *see* ECF No. 16. Now, Sutter seeks summary judgment on his CPA claim. *See* ECF No. 25.

**LEGAL STANDARD**

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party may move for summary judgment on part of a claim or defense. Fed. R. Civ. P. 56(a); *Corp. of Gonzaga Univ. v. Pendleton Enters., LLC*, 55 F. Supp. 3d 1319, 1321 (E.D. Wa. 2014).

ORDER - 5

The moving party bears the initial burden of informing the district court of the basis for his motion and identifying the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)). A moving party who bears the burden of persuasion at trial will succeed by producing evidence that supports its asserted claims. *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence . . . will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## DISCUSSION

The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The purpose of the CPA is to restrain "deceptive and fraudulent acts and practices in order to protect the public…" *Panag v. Farmer Ins. Co. of Wash.*, 204 P.3d 885, 889 (2009) (citing *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032 (1987)). The act is to be "liberally construed." *Short v. Demopolis*, 691 P.2d 163, 166 (1984). To prevail in a CPA claim, a party must establish: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag*, 204 P.3d at 889.

Sutter argues that there remains no genuine dispute as to the elements of a CPA claim, but reserves that "the full extent of Sutter's damages is an issue reserved for trial[.]" ECF No. 25 at 8. As explained below, the Court finds a genuine dispute as to whether an unfair or deceptive practice occurred and, presuming such an act did occur, whether the act caused Sutter injury. Further, Sutter seeks attorney's fees in his motion for summary judgment, and the Defendants move for additional discovery under Fed. R. Civ. P. 56(d).

**A. Unfair or Deceptive Act**

"[A] claim under the Washington CPA may be predicated upon a *per se* violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (2013) (en banc). Although Sutter principally advances a *per se* violation argument, his motion implicates each theory. The Court considers each in turn.

*1. Per Se Violation*

"A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Sutter argues that Defendants violated the CPA because they violated the CLA. ECF No. 25 at 8. The CLA explains that "the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act . . . ." RCW 31.04.208. It is a violation of the CLA to "[d]irectly or indirectly engage in any unfair or deceptive practice toward any person[.]" RCW 31.04.027(1)(b).

In support of the argument, Sutter points to the DFI's Closure of Complaint letter, which provides that the DFI "determined that [Defendants] likely violated . .

ORDER - 8

. RCW 31.04.027(1)(b) . . . RCW 31.04.145 . . . WAC 208-620-550(14) [and] RCW 31.04.155 . . . ." ECF No. 27-5 at 3. Sutter argues that "[i]t is indisputable that the DFI found Defendants' conduct, including its communications to Sutter, to be in violation of the CLA and Washington's Administrative Code." ECF No. 35 at 3.

Sutter offers no case law demonstrating that DFI findings are binding on a federal court at summary judgment. Where the DFI discovers violations of statute, the DFI is able to bring an enforcement action to correct the violative conduct. *See Nationscapital v. Dept's of Fin. Insts.*, 147 P.3d 78, 82-85 (Wash. Ct. App. 2006). As prescribed by statute, the DFI may seek to enjoin acts or practices that constitute violations of RCW 31.04 *et seq*. in state court. RCW 31.04.165(4). Here, the DFI conducted a "limited-scope investigation" which appears to have included a review of the same evidence presented in support of Sutter's pending motion for summary judgment. ECF No. 27-5 at 3-4. The DFI's letter concludes as follows:

> Respondents are expected to implement a system of controls designed to prevent future violations of the Act. The Department will review Respondents' efforts during Respondents' next examination to ensure compliance with the Act.
>
> This resolution is not considered a formal administrative or enforcement action for purposes of NMLS disclosure reporting. Accordingly, this complaint filed against Respondents is closed. However, the Department may

ORDER - 9

> reopen this complaint in the event that subsequent information comes to our attention regarding this matter.

ECF No. 27-5 at 6.

The letter does not indicate what standard of proof the DFI applied to reach factual findings. Whatever the burden, the DFI found that Koldaro knew it was Sutter and Ribble's intent for Ribble to assume Sutter's mortgage, that Koldaro worked with Ribble to refinance her mortgage to purchase Sutter's property, that Koldaro provided Ribble a form deed, and that, after the pieces fell in place, Sutter was left as the only borrower on the note and was unable to obtain a new mortgage. ECF No. 27-5 at 5. The DFI found that "[p]eople do not generally choose to put themselves in potential legal jeopardy by transferring title but leaving the mortgage in their name." ECF No. 27-5 at 5. The DFI concluded that [t]he context in which Respondent Koldaro made these statements to Ms. Ribble makes them at best misleading, and at worst intentionally deceptive." ECF No. 27-5 at 5.

The DFI's investigation cannot supplant the Court's own summary judgment inquiry. *See Taylor v. Rothschild*, No. C18-5863 BHS, 2019 WL 3067255, at *6 (W.D. Wash. July 12, 2019) ("Plaintiff argues that . . . the Court should consider facts from the State of Washington's investigation in its decision. . . [.] Plaintiff has failed to show authority for the proposition that facts from an apparently ongoing agency investigation could be dispositive on the issue of whether a contractual provision is void[.]").

ORDER - 10

The DFI's standard of proof is unknown, but the Court's standard is known. To grant summary judgment, the burden is on the movant to demonstrate that there are no genuine disputes over material facts. *Barnes, LLC*, 934 F.3d at 906. A dispute is genuine "if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC*, 771 F.3d at 1125. The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. The DFI's assessment that a violation was "likely" is insufficient to support summary judgment.

Whether Koldaro and Global "[d]irectly or indirectly engaged in any unfair or deceptive practice[,]" and thereby violated the CLA, is in genuine dispute. RCW 31.04.027(1)(b). The evidence of the underlying communications between Sutter and Koldaro is threefold. There is Sutter's declaration, ECF No. 27, Koldaro's declaration, ECF No. 32, and a series of emails written after-the-fact in which the writers recount past events. ECF Nos. 28-2, 28-3, 28-5.

Sutter explains in his declaration that "Koldaro advised me that I could execute a deed to convey title in the 5th Street Residence to Ribble without a new mortgage and that the mortgage would stay tied to the property and not the

ORDER - 11

individual borrower." ECF No. 27 at 2 ¶ 8. Koldaro explains that "[b]ased on my memory, I specified to Ms. Ribble and Mr. Sutter that the mortgage would remain under his name unless Ms. Ribble contacted Mr. Sutter's loan servicer about assuming his mortgage." ECF No. 32 at 4 ¶ 8. He further explains that "I confirmed to Ms. Ribble that Mr. Sutter's mortgage would remain secured by the Property. I did not, however, advise either Mr. Sutter or Ms. Ribble that transferring title in the Property automatically resulted in transfer of a mortgage from one borrower to another." ECF No. 32 at 4 ¶ 9.

Sutter repeatedly emphasizes the October 4, 2019 emails as conclusive evidence that "Koldaro told Sutter the mortgage would stay tied to his property and not to him as the borrower." ECF No. 36 at 2 ¶ 3. The relevant email exchanges, in full, are as follows:

> Ribble, at 2:06 p.m.:
>
>> I just got off the phone with [Sutter] and he told me that you said that I didn't take over his mortgage when I filed the Deed with the court. That we need to do an assumption of the loan . . . that is not what you said when I asked you about taking over his loan in the beginning. You said this is how it is done and we took your advice to take over the mortgage. Now you are saying we aren't even close to doing that and it will take more time. You misrepresented your company and if you don't make this right I cannot stop John from going to the JAG for representation in this matter. I have all the emails you sent both him and me and also all the information you sent. It doesn't say anything about an assumption of anything. If this isn't resolved ASAP I will also be seeking representation. And from our

ORDER - 12

point of view all you were seeking is getting me to refinance my mortgage and not helping out two homeowners with a situation that we both came to you for help with. You said it would be no problem and it has been since then, a problem….

Koldaro, 2:12 p.m.

Good afternoon, When you file the deed with the court, you transfer ownership of the home. We typically do not object when borrowers transfer ownership of the home. The mortgage is attached to the home. As long as you continue to make payments on the mortgage, we do not have an issue with the mortgage being in [Sutter's] name. Does that make sense?

Ribble 2:15 p.m.

Sure but that isn't what we asked you. . . We asked you how to transfer the mortgage from John to me. And we followed you[sic] advice because we didn't know if it could be done. John is still responsible for the mortgage. That isn't what we wanted to do or thought we were doing. Or what we asked you about. We were very clear in what we wanted to do.

Koldaro 2:17 p.m.

The mortgage is tied to the home, not to specific people. If someone stops paying the mortgage, we go after the home, not the borrowers.

Ribble 2:21 p.m.:

You told him it was still in his name so he is still responsible and it isn't in mine which is what you said we were doing. You need to make this right.

Koldaro 2:23 p.m.:

ORDER - 13

> I told him the mortgage is in his name, yes, but the mortgage is tied to the home. We can look at official assumption/'refinance options if you wish, but usually people prefer to just leave the mortgage as is to avoid the extra costs/hassle since ultimately the title of the home is what matters most.

ECF No. 28-3 at 2-4.

Viewing the evidence in the light most favorable to Koldaro and Global, the emails speak to an apparent miscommunication or misunderstanding that occurred between the parties before Sutter executed a warranty deed transferring ownership of the 5th Street Residence to Ribble. *See* ECF No. 27-1. Further, the emails may indicate that Koldaro communicated only correct information to Sutter. He explained that "the mortgage is tied to the home" and, in the sense that the mortgage remained secured by the property, he was correct. ECF No. 28-3 at 2.

Beyond the emails, it is Koldaro's word against Sutter's, and the Court may not resolve a credibility dispute or draw inferences against the non-moving party at summary judgment. *Anderson*, 477 U.S. at 255. If Sutter is able to establish at trial that Koldaro advised him that executing a deed would extinguish his liability on the mortgage, the error in advice may establish a violation of the CLA, and constitute a *per se* violation of the CPA.[2] On this record, what actually transpired

---

[2] The DFI found that Koldaro and Global were in "apparent violation" of statutes requiring the targets of DFI investigations to completely and timely respond to DFI

ORDER - 14

remains in genuine dispute, and the Court reserves consideration of whether Koldaro's representations were unfair or deceptive as a matter of law until the content of those representations are found by a factfinder.

### 2. Capacity to Deceive Substantial Portions of the Public and Violation of Public Interest

In addition to establishing a *per se* violation of the CPA, a plaintiff may establish that an act was "unfair or deceptive" although not prohibited by statute. *Klem*, 295 P.3d at 1187. Where the relevant operative facts are undisputed, "whether that act or practice is 'unfair or deceptive' is a question of law." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020). "A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Id.* (citing *Panag*, 204 P.3d at 894).

---

directives, and in statutory recordkeeping requirements. ECF No. 27-5 at 6. Sutter does not argue or otherwise provide authority supporting the notion that these alleged statutory violations can give rise to a *per se* violations of the CPA. Further, Sutter has failed to establish the lack of a genuine dispute that "but for [these statutory violations his] injury would not have occurred." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007).

ORDER - 15

"Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer." *Id.* (quotations omitted).

Although it is the Court's role in CPA cases to determine whether an act or practice is "unfair or deceptive" as a matter of law, the Court cannot do so on this record because, as explained above, the relevant acts or practices are disputed. *Id.* To succeed on his claim, Sutter must establish that Koldaro's communications had "the capacity to deceive a substantial portion of the public." *Id.* Without factual findings as to what was communicated, the Court cannot determine whether Koldaro and Global violated the CPA.

Sutter has failed to show a lack of a genuine dispute of material facts requiring that the Court find a violation of the CPA as a matter of law.

**B. Causation and Injury**

A CPA plaintiff must prove that a defendant's violation caused him injury. *Young*, 472 P.3d at 994. Sutter argues that he remained obligated to make mortgage payments on the 5th Street Residence, lost access to his VA Home Loan Guarantee Program, could not purchase a new house after moving out of the 5th Street Residence, and had to purchase a storage shed for his belongings. ECF No. 25 at 8-9. Even assuming that a CPA violation can be established at trial, Sutter has failed to demonstrate a lack of a genuine dispute that his alleged injuries are

the result of the violation, or at the very least, the posture of the case warrants additional discovery into these elements.

Causation is disputed by Koldaro's declaration, which indicates that Ribble may not have initiated the process of taking out a new mortgage on the 5th Street Residence until August 2021, although she had owned the property since August 2019. ECF No. 32 at 5-6 ¶¶ 20-23. Koldaro indicates that the VA Home Loan Guarantee Program does not bar participants from securing more than one mortgage at a time, tending to dispute Sutter's allegation that his mortgage on the 5th Street Residence precluded him from securing another mortgage. ECF No. 32 at 7 ¶ 29. The Court cannot find summary judgment on causation with this record.

**C. Attorney Fees**

RCW 19.86.090 provides as follows:

> Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee.

*See also Mason v. Mortgage Am.*, 792 P.2d 142, 149 (Wash. 1990). Sutter argues that "the Court should award Sutter's reasonable attorney fees and costs incurred in bringing this cause of action and motion." ECF No. 25 at 10.

ORDER - 17

As explained above, the Court denies summary judgment, therefore an award of fees is inappropriate at this time. However, if a violation is found, state law provides for attorney's fees. RCW 19.86.090 provides that a person who suffered an injury in violation of the CPA may bring an action in superior court. Although originally filed in the Spokane County Superior Court, this case was removed to this Court, ECF No. 1. The proper vehicle for secure attorney's fees in federal court is Fed. R. Civ. P. 54(d)(2), which provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The motion for attorney's fees must be filed within 14 days of judgment, and explain the grounds for fees and amount sought. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iii).

Should Sutter seek attorney's fees pursuant to state law, he shall file a motion under Fed. R. Civ. P. 54(d) following judgment, or otherwise file a motion explaining why an alternative procedural vehicle is appropriate, with citation to relevant authority for the Court to consider.

**D. Request for Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)**

Fed. R. Civ. P. 56(d) provides that

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

ORDER - 18

declarations or to take discovery; or (3) issue any other appropriate order.

"A party seeking additional discovery under Rule 56(d) must explain what further discovery would reveal that is essential to justify its opposition to the motion for summary judgment." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018).

Defendants highlight that "[d]iscovery is in its early stages . . . ." ECF No. 31 at 20. Defendants attach the Declaration of Cynthia S. Park, counsel for Koldaro and Global. ECF No. 33. Park explains that, as of February 24, 2023, the parties had not engaged in written discovery or taken depositions. ECF No. 33 at 1 ¶ 2. On May 8, 2023, the Court stayed all deadlines pending resolution of the instant motion for partial summary judgment. ECF No. 39. Before the stay, discovery was set to close on June 16, 2023. ECF No. 22.

Defendants have not been afforded an opportunity to discover relevant material related to each of the elements of Sutter's CPA claim, in particular, injury and causation. As explained above, the only evidence on the record as to Sutter's damages and causation is his own declaration. Defendants should be afforded the opportunity to discover missing information relating to the CPA claim. That further discovery will reveal relevant information is more than "pure speculation[.]" *Stevens*, 899 F.3d at 678.

ORDER - 19

## CONCLUSION

For the reasons stated herein, Sutter's Motion for Partial Summary Judgment is denied, as is his request for attorney's fees. Koldaro and Global's request for additional discovery is granted.

Accordingly**, IT IS ORDERED:**

1. Plaintiff Jonathan Sutter's Motion for Partial Summary Judgment, ECF No. 25, is **DENIED.**

2. As directed in the Court's May 8, 2023 Order, the parties shall file, **on or before June 21, 2023,** a Joint Status Report and Joint Proposed Scheduling Order. ECF No. 39.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to the parties.

DATED June 7, 2023.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 20